UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      **NORTHERN DIVISION at ASHLAND**

CIVIL ACTION NO. 07-CV-52-JMH

ALGIE McCRARY,                                              PLAINTIFF,

VS:                  **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, ET AL.,                                       DEFENDANTS.

                         **** **** ****

Plaintiff Algie McCrary ("McCrary"), an inmate incarcerated at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has submitted a *pro se* civil rights complaint under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging that the defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Court has granted McCrary's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915 by separate Order.

The Court has previously entered an Order dismissing McCrary's *Bivens* claims other than those related to injuries sustained on July 26, 2006 and November 14, 2006 as time-barred or unexhausted. In that Order, the Court also dismissed all defendants who were not personally involved in some way in McCrary's medical care, but directed service of summons on the remainder. [Record No. 7] The Defendants have filed a Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [Record No. 14], and McCrary has filed

his Response thereto. [Record No. 26] The Defendants have not filed a reply memorandum in further support of their motion.

I.  **Factual Background**

On July 26, 2006, McCrary indicates that he fell leaving the cafeteria, injuring his right shoulder, hip, and leg. An officer and two inmates attempted to assist McCrary to his feet, but he was accidentally dropped, causing him to hit his head. He was immediately examined and treated by Physician's Assistant Daming in the Medical Center, who bandaged his wounds and provided him with over-the-counter pain medication. McCrary alleges Daming vastly underestimated the severity of his injuries and therefore failed to adequately treat him.

The next day, on July 27, 2006, Clinical Director and physician Dr. Sanchez examined McCrary's ankle, and perceived no acute injury. Nonetheless, McCrary complained for several days seeking additional medical treatment. Staff then took X-rays of the affected areas and sent the films to an outside radiologist for review. The radiologist indicated that the quality of the films was poor, but they nonetheless concluded that they did not indicate any abnormalities.

Nonetheless, McCrary alleges that in the months that followed this episode he began to experience periodic blurred vision, muscle spasms, memory loss, and slurred speech. On occasion his muscles would unexpectedly "jerk," in some instances so strongly and unexpectedly that it would cause him to fall down. McCrary was

examined by medical staff throughout this period, and they repeatedly performed tests on his blood pressure, heart rate, and temperature; tested blood and urine samples; and examined his eyes, ears, and throat along with a visual inspection of his surface wounds.  Those tests failed to reveal any physical cause for his symptoms.  Medical staff concluded that McCrary's symptoms were caused by psychological rather than physical problems.  At some point during this period, Dr. Sanchez and Health Services Administrator Waugaman told the rest of the medical staff that McCrary suffered from Manchausen Syndrome, had a very low I.Q., and a number of psychological ailments.

On November 14, 2006, after leaving the Medical Center McCrary fell down some stairs.  McCrary indicates that he does not remember the fall, only waking up in the Medical Center with people asking him if he was alright.  Apparently after McCrary fell down he was placed on a stretcher and taken back to Medical Department, where he was examined by P.A. Daming.  Daming's examination revealed that McCrary's skin was slightly tender, but that he was not bruised.  McCrary was alert and oriented and in no acute distress.  McCrary had a full range of motion in his arm and shoulder, and his blood pressure, pulse, respirations and body temperature were normal.  Daming prescribed ibuprofen for the pain and gave McCrary an ice pack and ace bandages to reduce the swelling.  To rule out the possibility of broken bones, X-rays were ordered.  The X-rays were taken on November 17, 2006, and a review of the films showed

McCrary's bones to be free of any fracture, dislocation, or other abnormality. A followup examination on November 29, 2006, showed no evidence of swelling and a full range of motion in the areas initially affected by the injury.

McCrary alleges that the ibuprofen prescribed for his pain was insufficient to the task, and that after his fall he became afraid to walk up stairs without assistance. While he asked that medical staff be required to escort him on every trip up or down the stairs, that request was repeatedly denied. Affidavits from staff at the Medical Center allege that while they declined to hold on to McCrary as he ascended staircases, they offered to walk beside him as he did so and catch him if he lost his balance or footing.

McCrary attached to his complaint copies of grievance forms he filed with the BOP regarding his treatment after his November 14, 2006 fall as well as the BOP's responses thereto. Those forms collectively indicate that he has exhausted this claim up to and including a final denial by the BOP's Central Office for inmate appeals. McCrary has not included documentation regarding exhaustion of any other claim. Shortly after the Central Office's denial of his grievance, McCrary filed the present lawsuit against 30 different prison officials, each in their individual and official capacity.

**II. Discussion**

    **A.   Plaintiff's Motion to Delay Consideration Pursuant to Rule 56(f).**

After the Court granted McCrary's request for an additional thirty days to respond to Defendants' Motion [Record No. 34], McCrary filed a second request seeking additional time to respond. [Record No. 36] The Court subsequently denied that motion. [Record No. 37] McCrary's second motion requested that, in the event the request was denied, the Court deny the Defendants' Motion on the merits or, in the alternative, delay consideration of the merits pursuant to Rule 56(f) to afford him additional time to conduct discovery. That rule provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

FED. R. CIV. P. 56(f). In his request, McCrary asserts that "the absence of any discovery conducted by the plaintiff is grounds, *ipso facto*, for a continuance as set forth by Rule §56(f)..." McCrary gives no indication regarding what information he lacks to "present facts essential to justify its opposition" to the Defendants' motion for summary judgment. The Court also notes that the Defendants have filed several affidavits from staff at the Medical Center describing in some detail the care given to McCrary on particular dates, as well as voluminous medical records of McCrary's numerous visits to the Medical Center. The plaintiff therefore possesses a substantial volume of the evidence most directly relevant to his claims.

To invoke the protections of Rule 56(f), the nonmovant must

file an affidavit in response to the summary judgment motion which details the discovery needed and demonstrates specific reasons why the nonmovant cannot oppose the summary judgment motion without it. *United States v. One Harrington & Richardson Rifle*, 378 F.3d 533, 535 (6th Cir. 2004). General and conclusory assertions that more discovery is needed are not enough: the affidavit must be detailed and specific. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004); *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (nebulous assertions of additional time for discovery are insufficient). Not only must the nonmovant explain why the facts it seeks are material, it must explain why it has not previously discovered the information. *Toms v. Taft*, 338 F.3d 519, 523-24 (6th Cir. 2003) (more time for discovery not warranted where party sought information that was not relevant to dispositive question); *Ball*, 385 F.3d at 720; *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) ("Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information."). McCrary's one-sentence conclusory assertion of his need for further discovery to oppose Defendants' motion, barren of any specific details regarding the information needed, manifestly fails to satisfy any of the criteria for relief under Rule 56(f), and McCrary's request will therefore must be denied.

B.  **Summary Judgment Standard**

Because the United States has submitted an affidavit and exhibits in support of its motion and invited the Court to consider materials extrinsic to the face of the Complaint, the Court must treat its motion to dismiss as one seeking summary judgment pursuant to Rule 56. FED. R. CIV. P. 12(b); *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may properly consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The moving party initiates the process by asserting that there is not sufficient evidence to uphold a jury verdict in the nonmovant's favor on at least one essential element of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005); *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004). If the totality of the evidence submitted "would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In response, the nonmovant must demonstrate the existence of specific facts which show that there is a genuine issue of material fact for trial. He cannot rely merely on the pleadings but must specifically designate affidavits, depositions, interrogatory responses, and admissions which support his position on the facts. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986); *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). The nonmovant's evidence must be sufficient to support a jury's verdict in his favor. *Anderson*, 477 U.S. at 251. If the applicable substantive law requires the nonmovant to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

C.   **McCrary's July 26, 2006 Fall**.

Procedurally, federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999).  The BOP's grievance process is set forth at 28 C.F.R. §§ 542.10-.19.  That process requires an inmate to file a formal grievance with the warden using Form BP-229 (formerly Form BP-9) within 20 days of the events complained of.  28 C.F.R. § 542.14(a).

Here, the record indicates that McCrary never filed a grievance regarding the adequacy of the medical care he received for his injuries sustained on July 26, 2006.  Because McCrary did not invoke, let alone complete, the BOP's inmate grievance process, that failure alone would require dismissal of his *Bivens* claims without prejudice.  *Colon v. Harvey*, 344 F. Supp. 2d 896, 898 (W.D.N.Y. 2004).  However, in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process, and the failure to do so conclusively bars those claims.  *Woodford v. Ngo*, 548 U.S. 81, 97 (2006).  Because McCrary did not then and cannot now meet the deadlines for filing a prison grievance under 27 C.F.R. § 542.14(a), his *Bivens* claims arising out his treatment after his

July 20, 2006 injury are forever barred, and will be dismissed with prejudice.

    D.    **McCrary's November 14, 2006 Fall**.

The Eighth Amendment prohibits the infliction of "Cruel and Unusual Punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Constitution "does not mandate comfortable prisons," but the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and ... 'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Prisoners have the constitutional right to adequate medical care while in custody. *Farmer,* 511 U.S. at 832; *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Thus, when prison officials display "deliberate indifference to the serious medical needs of prisoners," they commit cruel and unusual punishment in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104. In reviewing the sufficiency of a complaint, the Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle*, 429 U.S. at 106. This requirement has two components. The first component is objective and requires that the prisoner be complaining about medical needs that are sufficiently "serious" to implicate

constitutional concerns.  The second component is subjective, and requires the prisoner to demonstrate that prison officials acted with "deliberate indifference" to those needs, a knowing and culpable state of mind demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

The Court need not decide whether McCrary's medical concerns are sufficiently serious to satisfy the first, objective, component, because it is clear from the undisputed record of the medical care provided by the Defendants that he cannot satisfy the second, subjective, component.  McCrary's claim that his diagnosis and treatment after his fall on November 14, 2006 constitutes "deliberate indifference" is amply refuted by the record.  As noted above, immediately after his fall, McCrary was placed on a stretcher and taken to the Medical Department where he was examined and treated by Daming.  Because all of the objective medical evidence revealed at most slight bruising, Daming prescribed only pain relievers and bandages.  Daming's initial assessment was confirmed by X-rays, which likewise indicated that McCrary did not suffer any acute injury.  The medical history indicates that Daming and others in the Medical Center provided McCrary with exhaustive medical care, and continued to do so even in the absence of any significant, objectively-verifiable physical cause for his proclaimed symptoms.  Such solicitude for McCrary's continued

health is the antithesis of the deliberate indifference proscribed by the Eighth Amendment, and the Defendants are entitled to summary judgment on this claim. *Majors v. Ridley Turner*, 277 F.Supp.2d 916, 918-19 (N.D. Ind. 2003) (dismissing claim of deliberate indifference, which is akin to criminal recklessness, where plaintiff failed to show "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm."); *Sanders v. Spillers*, 2005 WL 977835 (5th Cir. 2005) (affirming summary judgment for prison medical staff who responded to prisoner's complaints about his back and breathing by visiting him daily during rounds over 17-day period and observing nothing abnormal until last day, when he was taken to medical unit, prisoner's vital signs, breathing, and pulmonary health appeared normal but doctor diagnosed muscle spasm and prescribed two medications, and second doctor found nothing wrong with prisoner); *Williams v. Koenigsmann*, 2004 WL 315279 (S.D.N.Y. 2004) (nurse who prescribed pain medication, referred prisoner to a specialist, and ordered a CAT scan was not deliberately indifferent to prisoner's medical needs even though plan of treatment did not succeed in alleviating plaintiff's suffering). *See also Davis v. Powell*, 110 Fed.Appx. 660, 664 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in

state tort law." (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)). Because McCrary's Complaint does not allege "acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs," it must be dismissed. *Estelle*, 429 U.S. at 106.

### III. Conclusion

The Court being sufficiently advised, it is **ORDERED** as follows:

1. Plaintiff's Motion to Delay Consideration [Record No. 36] is **DENIED.**

2. Defendants' Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [Record No. 29] is **GRANTED.**

3. The Plaintiff's Complaint [Record No. 2] is **DISMISSED WITH PREJUDICE.**

4. Plaintiff's second request for the appointment of counsel [Record No. 39] is **DENIED AS MOOT.**

5. An appropriate Judgment will be entered contemporaneously herewith.

This the 25th day of March, 2008.



**Signed By:**

*Joseph M. Hood*

**Senior U.S. District Judge**